## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF KENTUCKY
### NORTHERN DIVISION
### AT COVINGTON

**CIVIL ACTION NO. 12-200-DLB-JGW**

**JUDITH ROBERTS,** *Administrator*
*of the estate of Mildred Cavanaugh*                                                 **PLAINTIFF**


**vs.**                                         **MEMORANDUM OPINION AND ORDER**


**WOODCREST MANOR CARE CENTER,** *et al.*                          **DEFENDANTS**

                              **\*\*\*   \*\*\*   \*\*\*   \*\*\***

This matter is before the Court on Plaintiff's Motion to Remand (Doc. # 8) this action

to Kenton Circuit Court, which has been fully briefed (Docs. # 12, 18), and is ripe for review.

Because this Court does not have original jurisdiction over this matter, Plaintiff's Motion is

**granted** and this matter is **remanded** to Kenton Circuit Court.

### 1.      Introduction

Plaintiff filed this action in Kenton Circuit Court on September 13, 2012, alleging that

Defendant Woodcrest Manor, and its employees and agents, failed to provide adequate

medical care to Mildred Cavanaugh, which ultimately led to her death.  Plaintiff's Complaint

alleges five substantive counts, two of which are relevant to Plaintiff's pending Motion to

Remand.  In Count 2, Plaintiff asserts a state-law negligence per se claim, alleging that

Defendants violated standards of care set forth in Kentucky statutes and regulations, as

well as the Code of Federal Regulations, including but not limited to 42 C.F.R. § 483.  In

Count 5, Plaintiff asserts a claim for "Violation of Federal Medicare Statutes," alleging that

Defendants violated 42 U.S.C. § 1396r(b)(2), 42 U.S.C. § 1396r(b)(4)(A), and 42 U.S.C. § 1396r(b)(4)(C).

Defendants removed this case from state court on October 3, 2012 pursuant to 28 U.S.C. § 1441(a). In their Notice of Removal, Defendants assert that this Court has original jurisdiction over Count 5 of the Complaint pursuant to 28 U.S.C. § 1331 because it purports to assert a federal cause of action arising out of the Medicaid reimbursement statutes. Defendants also contend that the Court has supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367 because they are so related to Count 5 that they form the same case or controversy. Notably, however, Defendants do not assert in their Notice of Removal that this Court has federal-question jurisdiction over Plaintiff's negligence per se claim, which relies in part on 42 C.F.R. § 483. *See Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 312 (2005) ("There is, however, another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction, this Court having recognized for nearly 100 years that in certain cases federal-jurisdiction will lie over state-law claims that implicate significant federal issues.").

On October 31, 2012, Plaintiff filed the pending Motion to Remand pursuant to 28 U.S.C. § 1447(c), arguing that this Court lacks subject-matter jurisdiction. Plaintiff notes that Defendants' sole basis for removal was that the Complaint purports to assert a federal cause of action in Count 5 for violating various subsections of 42 U.S.C. § 1396r. In the Motion to Remand, Plaintiff contends that there is no private cause of action for Defendants' failure to comply with the provision of § 1396r. Therefore, Plaintiff also concedes that the Complaint fails to state a federal cause of action. As such, Plaintiff argues that the Court does not have original jurisdiction over this matter and it must,

2

therefore, be remanded to state court pursuant to 28 U.S.C. § 1446(c).

Defendants respond that this matter was appropriately removed from state court because Plaintiff's claims "arise under" federal laws.  For the first time, Defendants assert that two claims within the Compliant present a federal question: the negligence per se claim raised in Count 2 and the "Violation of Federal Medicare Statutes" claim raised in Count 5.[1] Relying on the Supreme Court's decision in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, Defendants argue that each of these claims raises a substantial question of federal law, which gives this Court federal-question jurisdiction pursuant to 28 U.S.C. § 1331.

## 2.    Federal-question jurisdiction under 28 U.S.C. § 1331

Defendants are entitled to remove this action if Plaintiff could have brought it in federal district court originally, 28 U.S.C. § 1441(a), as a civil action "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Federal-question jurisdiction is typically invoked by a plaintiff who pleads a cause of action that is created by federal law.  *Grable*, 545 U.S. at 312.  This may include a right of action expressly created by statute, such 28 U.S.C. § 1983, *Id.,* or a right of action that is implied from a statute, such as the right of private victims of discrimination to sue for violations of Title IX.  *Cannon v. University of Chicago*, 441 U.S. 677, 688 (1979). However, "[t]here is . . . another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction

---

[1] Defendants also assert that Claim 1 raises a substantial federal question because it alleges that they were negligent for violating standards of care set forth in the Code of Federal Regulations, particularly 42 C.F.R. § 483.  Although the claim has been labeled as a negligence claim, it is in fact a negligence per se claim to the extent it relies on the Code of Federal Regulations to provide the standard of care.  As such, the claim mirrors Plaintiff's negligence per se claim raised in Claim 2, and the Court will analyze these claims simultaneously.

. . . ." *Grable*, 545 U.S. at 312.  "[I]n certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Id.*

As Defendants appropriately argue, two counts within the Complaint potentially create a federal question.  In Count 5, Plaintiff appears to plead a cause of action created by federal law for violations of the Federal Medicaid Statutes.  Whether the Court may exercise federal-question jurisdiction over Count 5 turns on whether a federal private right of action exists for violations of those statutes.  In Count 2, Plaintiff asserts that Defendants violated provisions of 42 C.F.R. § 483, which caused the death Ms. Cavanaugh, and establishes that they were negligent per se under Kentucky law.  Whether the Court may exercise federal-question jurisdiction over Count 2 turns on whether the claim raises a "substantial federal question."  Each claim will be addressed in turn.

### 3.    The Court does not have federal-question jurisdiction over Count 5

In Count 5, Plaintiff asserts a private right of action against Defendants directly under three provisions of the Federal Nursing Home Reform Act ("FNHRA"): 42 U.S.C. § 1396r(b)(2), 42 U.S.C. § 1396r(b)(4)(A), and 42 U.S.C. § 1396r(b)(4)(C).  The FNHRA does not expressly provide a private right of action.  *Duncan v. Johnson-Mathers Health Care, Inc.*, No. 5:09-cv-417-KKC, 2010 WL 3000718, at *5 (E.D. Ky. July 28, 2010).  This issue, then, turns on whether a private right of action may be implied from the FNHRA.

In an exhaustive opinion, Chief Judge Caldwell held there is no private right of action under the FNHRA.  *Id.* at *10.  In *Duncan*, the court began by reviewing the legislative history of the Act.  *Id.* at *3.  The FNHRA was enacted under the Spending Clause, and served to amend provisions of the Medicare and Medicaid Acts which authorized payment of federal funds to reimburse nursing homes for services provided to residents.  *Id.*  Prior

4

to the FNHRA, nursing homes qualified for reimbursement by receiving certification, which required the facilities to demonstrate their compliance with standards set forth in 42 U.S.C. § 1395i-(3)(b)-(d) and  42 U.S.C. § 1396r(b)-(d).  *Id.*  However, once the facilities received certification, the federal legislation and its implementing regulations provided for limited, and rarely used, sanctions to ensure continued compliance.  *Id.* at *4.  As a result, nursing homes were allowed to provide substandard care while continuing to receive federal funding.  *Id.*

Congress enacted the FNHRA to provide "for enhanced oversight and inspection of nursing homes participating in the Medicare and Medicaid programs."  *Id.*  The Act includes more extensive standards that nursing homes must meet before receiving certification.  *Id.*  It also provides for unannounced surveys to ensure compliance, as well as a wider range of sanctions that may be levied for non-compliance, including denial of payments, civil monetary penalties, and closure of the non-conforming nursing homes.  *Id.*        A f t e r reviewing the history of the FNHRA, the court considered whether a right of action may be implied from the Act.  *Id.* at *5.  The *Duncan* Court first outlined the Supreme Court's guidance on determining whether to infer a private right of action from a statute.

> In *Gonzaga University v. Doe*, the Supreme Court held that the Family Education Rights and Privacy Act of 1974 ("FERPA") did not create personal rights enforceable under section 1983. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 276 (2002).  In reviewing its prior decisions on rights of actions under section 1983 and also under federal statutes, the Court emphasized that "in either case we must first determine whether Congress intended to create a federal right."  *Id.* at 283 (emphasis added).  The Court stressed that nothing "short of an unambiguously conferred right" supports a cause of action under section 1983 or directly under a statute.  *Id.*  Accordingly, the Court explained that "where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under section 1983 or under an implied right of action."  *Id.* at 286.

*Duncan*, 2010 WL 3000718, at *5.

The court then reviewed the text of 42 U.S.C. § 1396r and stated: "[T]he Court does not find that Congress unambiguously intended to create new individual rights or enforceable rights of action in the FNHRA." *Id.* at *8. "The statute does not have an 'unmistakable' focus on the rights of individual nursing home residents, but instead focuses on requirements that the nursing homes must meet in order to become and remain eligible for funding." *Id.* (citing *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001)). Therefore, the court refused to find an implied right of action under 42 U.S.C. § 1396r. *Id.* at *10.

Courts are largely in agreement with *Duncan* that a private right of action cannot be implied from 42 U.S.C. § 1396r. Although the Sixth Circuit has not addressed this issue, courts within this Circuit consistently agree with *Duncan*. *See Nicols v. St. Luke Center of Hyde Park*, 800 F. Supp. 1564, 1568 (S.D. Ohio 1992) ("As the statute is silent on its face as to any private remedy, and as the Court is aware of no other objective indication that Congress intended to create a private cause of action for violations of 42 U.S.C. § 1396r, the Court concludes that Plaintiffs do not possess a federal cause of action thereunder"); *Moorman v. HQM of Spencer County, Inc.*, No. 3:06cv-224-R, 2006 WL 2460818, at *1 (W.D. Ky. 2006) (agreeing with other courts that have held there is no private cause of action for violations of 42 U.S.C. § 1396r(b)(4)). Moreover, the majority of courts in other jurisdictions agree that 42 U.S.C. § 1396r does not authorize a private right of action against nursing homes. *See Brogdon ex rel. Cline v. National Healthcare Corp.*, 103 F.Supp.2d 1322, 1331-32 (N.D. Ga. 2000) (collecting cases). Accordingly, the Court will follow Judge Caldwell's well-reasoned decision in *Duncan*, as well as the

numerous other courts, in holding that nursing home residents do no have a private right of action against private nursing homes for violating 42 U.S.C. § 1396r.

Ignoring the consensus within this Circuit that there is no private right of action for violations of 42 U.S.C. § 1396r, Defendants rely on the Third Circuit's decision in *Grammar v. John J. Kane Regional Centers-Glen Hazel*, 570 F.3d 520 (3d Cir. 2009), for the proposition that 42 U.S.C. § 1396r creates rights that may be enforced by their intended beneficiaries. The Court, however, declines to follow *Grammar* for two reasons. First, it is not binding precedent, as it is a decision from the Third Circuit that directly conflicts with a well-reasoned decision from this Court. Second, as the court addressed in great detail in *Duncan*, the Third Circuit's decision in *Grammar* is "inconsistent with the Supreme Court's admonition in *Gonzaga* that statutes only display a congressional intent to create federal rights when their text has 'an unmistakable focus on the benefitted class.'" *Duncan*, 2010 WL 3000718, at *8 (quoting *Gonzaga*, 536 U.S. at 283). The FNHRA focuses on "setting forth requirements that nursing homes must follow to maintain their certifications and eligibility for federal funding." *Id.* It does not have an "unmistakable focus" on nursing residents and, therefore, does not appear to create enforceable rights for nursing home residents. For each of these reasons, the Court refuses to apply *Grammar*'s holding that the FNHRA creates privately enforceable rights. Having concluded that there is no federal private cause of action for violations of 42 U.S.C. § 1396r, the Court does not have federal-question jurisdiction over Count 5.

**4.     Plaintiff's negligence per se claim in Claim 2 does not raise a "substantial federal question"**

In Count 2, Plaintiff alleges that Defendants were negligent per se for violating, *inter alia*, various implementing regulations of the FNHRA, found at 42 C.F.R. § 483. Defendants rely on *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005) (hereinafter "*Grable*") for their position that the Court may exercise federal-question jurisdiction over this state-law claim because it raises a substantial federal question.  Specifically, Defendants contend that the parties dispute the interpretation and application of the federal regulations, and the Court's resolution of that dispute will have implications for nursing homes across the country, thus creating a substantial federal question.

In *Grable*, "the plaintiff filed a state law claim [in state court] to quiet title, alleging that the defendant's record title was invalid because the IRS, in seizing the plaintiff's property to satisfy a federal tax deficiency, had failed to give the plaintiff proper notice pursuant to 26 U.S.C. § 6335(a)." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 567 (6th Cir. 2007).  The defendant removed the case to Federal District Court as presenting a federal question, arguing that the state-law claim required interpretation of the notice statute in the federal tax law.  *Grable*, 545 U.S. at 311.  The district court sustained removal, finding that the state-law claim posed a significant question of federal law.  *Id.* The Sixth Circuit Court of Appeals affirmed on the jurisdictional issue, finding that "the title claim raised an issue of federal law that had to be resolved, and implicated a substantial federal interest (in construing federal tax law)."  *Id.*

8

The Supreme Court granted certiorari to resolve a split among the circuits on whether *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986) "always requires a federal cause of action as a condition for exercising federal-question jurisdiction." *Grable*, 545 U.S. at 312.  The Court held that a federal cause of action is not required, and that courts may exercise federal-question jurisdiction over "state-law claims that implicate significant federal issues." *Id.*  However, the mere presence of a federal issue embedded in a state-law claim does not open the door to federal court. *Id.* at 314.  "Instead, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.*

In applying *Grable*'s holding, the Sixth Circuit has stated that the substantial-federal-question doctrine has three parts: (1) the state-law claim must necessarily raise a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb any congressionally approved balances of federal and state judicial responsibilities. *Mikulski*, 501 F.3d at 568 (citing *Grable*, 545 U.S. at 314).  The Court will address each of these factors in turn as they relate to Plaintiff's negligence per se claim.

### (A)     Does the negligence per se claim raise a disputed federal issue?

Defendants assert that the parties dispute the "meaning" of provisions of 42 C.F.R. § 483, which gives rise to a disputed federal issue.  Neither Plaintiff nor Defendants have clearly articulated how the parties dispute the meaning of the implementing regulations. Instead, it appears that the real dispute is factual – whether Defendants' conduct violated provisions of 42 C.F.R. § 483.    Nonetheless, the Court will accept Defendants'

9

representation as true and assume there is a disputed issue over the meaning of the federal regulations.

### (B)   Is there a substantial federal interest in the disputed federal issue?

The Supreme Court has identified four factors a court should consider in determining whether there is a substantial federal interest in the disputed federal issue: (1) whether the case includes a federal agency, and particularly, whether the agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated). *Mikulski*, 501 F.3d at 570. "While certain of these factors may be more applicable than others in any given set of circumstances, no single factor is dispositive and these factors must be considered collectively, along with any other factors that may be applicable in any given case." *Id.* Here, the Court will consider each factor in turn, and then consider them in the aggregate.

The first factor – whether this case includes a federal agency – weighs against characterizing the federal interest as substantial. The disputed federal issue is whether Defendant Woodcrest Manor Care Center, a private nursing facility and recipient of Medicaid funding, and its employees and agents, complied with various provisions of 42 C.F.R. § 483. This issue does not involve a federal agency and, therefore, this factor weighs against Defendants' position.

The second factor – whether the federal question is important – requires a subjective analysis. *Mikulski*, 501 F.3d at 570.  Defendants assert that the parties dispute the "meaning" of provisions within 42 C.F.R. § 483.  Defendants also argue that because these regulations have broad application to nursing facilities across the country, "their construction and use are important issues of federal law that sensibly depend upon analysis by federal courts." (Doc. # 12 at 5).  However, these bald assertions fail to show how the federal question is important.

As the Sixth Circuit has recognized, a substantial federal interest does not arise solely because resolution of a state-law claim might require analysis and interpretation of federal law. *See Mikulski*, 501 F.3d at 570.  Rather, the court must consider the breadth and substance of the disputed federal issue, and whether it will have precedential value for future cases. *See id.*  Here, Defendants have not specifically identified any disputed issue over the meaning of provisions within 42 C.F.R. § 483.  Without doing so,  the Court is not prepared to characterize the disputed federal issue as important.

The third factor – whether resolution of the disputed issue is dispositive of the case – weighs heavily against finding a substantial federal interest.  Plaintiffs have alleged that Defendants were negligent per se for violating provisions of 42 C.F.R. § 483, as well as Kentucky statutes and regulations.  As such, even if Defendants prevailed on their argument concerning the meaning of provisions within 42 C.F.R. § 483, Defendants could still be found negligent per se for violating Kentucky statutes and regulations. More importantly, the parties' disagreement over the meaning of provisions within 42 C.F.R. § 483 may be entirely irrelevant.  Before the meaning of those regulations has any relevance, the Court must first determine, as a matter of Kentucky law, whether a violation

11

of provisions within 42 C.F.R. § 483 may constitute negligence per se.  In Kentucky, a violation of a statute or regulation does not necessarily imply negligence.  *Alderman v. Bradley*, 957 S.W.2d 264, 267 (Ky. App. 1997).   Instead, a violation only becomes negligent per se if (1) the plaintiff is a member of the class of persons intended to be protected by the regulation, and (2) the injury suffered is an event which the regulation was designed to prevent.  *Id.*  It does not appear that a Kentucky court has determined whether a violation of 42 C.F.R. § 483 constitutes negligence per se.  However, courts in other states have held that a violation of  42 C.F.R. § 483 does not amount to negligence per se.  *See Brown v. Sun Healthcare Group, Inc.*, 476 F. Supp. 2d 848, 851 (E.D. Tenn. 2007) (collecting cases).  If the Court were to find that 42 C.F.R. § 483 does not supply the standard of care for a negligence per claim under Kentucky law, the meaning of the federal regulation would have no relevance to the ultimate adjudication of this claim. Therefore, the parties' disagreement over the meaning of the  regulations within 42 C.F.R. § 483 is not likely to be dispositive of this case.

The fourth factor –  whether a decision as to the federal question will control numerous other cases  – is difficult to determine based on the parties' briefing.  Again, Defendants have failed to specifically define the disputed federal issue.  If the issue is a disagreement over the interpretation of a regulation, without knowing which regulation is disputed, the Court has no way to speculate whether a resolution will control numerous other cases.  If, on the other hand, the issue is simply whether Defendants' conduct violated the plain text of the regulation, that conclusion will not have great precedential value for future cases.   In the end, Defendants, who have the burden of establishing subject-matter jurisdiction over this removed action, have failed to show how the resolution

of the disputed federal issue will control numerous other cases.  Moreover, having considered each of these factors separately, the Court also concludes that there is not a substantial federal interest in the disputed issue when the factors are considered in combination.

> **(C)**     **Would the exercise of jurisdiction disturb any congressionally approved balances of federal and state judicial responsibilities?**

Even if there were a substantial federal interest, exercising jurisdiction over this case would disturb the congressionally approved balance of federal and state judicial responsibilities.  As the Supreme Court clarified in *Grable*, the starting point of this analysis is whether Congress created a cause of action for violations of the statute or regulation. *Grable*, 545 U.S. at 318 ("Accordingly, *Merrell Dow* should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive, of the 'sensitive judgments about congressional intent' that § 1331 requires"). Here, as discussed above, Congress did not create a cause of action for violations of 42 U.S.C. § 1396r or its implementing regulations.  *See supra* Section 3.  This demonstrates that Congress did not intend to welcome disputes over compliance with these statutes and regulations into federal court.  *See Grable*, 545 U.S. at 318.  However, the inquiry does not end there.

The Court must also consider whether it would "materially affect, or threaten to affect, the normal currents of litigation" by exercising jurisdiction over this state-law tort case that implicates federal law.  *Id.* at 391.  As the Sixth Circuit has phrased the inquiry, "we must pursue this question further and inquire into the risk of upsetting the intended balance by opening the federal courts to an undesirable quantity of litigation."  *Mikulski*,

501 F.3d at 573.  While this is a speculative inquiry, the Court concludes that exercising jurisdiction over this state-law claim would certainly upset that balance.  "'The violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings.'" *Grable*, 545 U.S. at 318-19 (quoting  Restatement (Third) of Torts § 14, Reports' Note, Comment *a*, p. 195 (Tent. Draft No. 1,  Mar. 28, 2001)).  If federal courts were to exercise jurisdiction over every state claim that rested on violations of the FNHRA and its implementing regulations, this could herald a potentially enormous shift of traditionally state cases into federal court.  Given Congress' decision not to create a private right of action for violations of this Act, as well as the non-judicial sanctions included in the Act, the Court concludes that Congress did not intend federal courts to exercise federal-question jurisdiction over this state-law claim.

### 5.    Conclusion

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)    Plaintiff's Motion to Remand (Doc. # 8) is hereby **GRANTED**;

(2)    This matter is hereby **remanded** to Kenton Circuit Court from which it was removed.

This 20th day of December, 2012.



Signed By:

*David L. Bunning*

United States District Judge

G:\DATA\Opinions\Covington\2012\12-200 MOO granting mtn to remand.wpd

14